GARRETT, J.
11 Following the unexpected and tragic death of their father, the juvenile court awarded guardianship of three minor children to the paternal grandmother and her husband. The mother of the children appeals from the juvenile court judgment. For the following reasons, we affirm.
FACTS
Whitney Thompson is the mother of PDJ (DOB 6/14/04), WIJ (DOB 8/10/05), and HOJ (DOB 6/27/06). This case has been before this court on several occasions. In order to understand the arguments asserted by the mother, recitation of the factual and procedural history of this case is necessary. On September 15, 2011, the Louisiana Department of Children and Family Services (“DCFS”) received a report, that HOJ had a dark mark under her eye. PDJ, WIJ, and HOJ reported that their stepfather whipped them with an extension cord. The mother stated that she whipped the children with a belt and a stick. These children" and two others, one of whom also belonged to Ms. Thompson, were removed from the home oh September 19, 2011, pursuant to an instanter order issued by the juvenile court on that date.
On September 21, 2011, at a continued custody hearing, the juvenile court found grounds • to believe the children were in need of care. Custody of PDJ, WIJ, and HOJ was placed with their father, Preston D. Jones, with supervised visitation to the mother. A continued custody and protective order was filed by the juvenile court on September 26,2011.
On October 18, 2011, the state filed a petition seeking to have the children adjudicated in need of care (“CINC”). An appearance to answer shearing was held on October 21, 2011, and custody was maintained with the father.
An evidentiary hearing was held on December 16, 2011. All parties stipulated to the introduction of a DVD of a videotaped interview of the children at the Gingerbread House. In that interview, the children stated that they were whipped by their mother, and stepfather with an extension cord and a stick or a backscratcher. At the hearing, HOJ stated that her moth *919 er hit her with an extension cord or a belt, but later said bruising on her legs was caused when WIJ hit her with a jump rope. HOJ said that a bruise under her eye was caused when she ran into a wall.
Dr. Jennifer Rodriguez, an expert in pediatrics with special experience in child abuse, testified that HOJ had loop marks on her legs consistent with being struck with an extension cord. HOJ also told Dr. Rodriguez that she had been whipped with an extension cord.
The juvenile court found that the mother caused the injuries to HOJ. At a hearing on January 20, 2012, the court determined that the children at issue here were to remain with their father.
Following another hearing.on January 26, 2012, the juvenile court entered a judgment of disposition finding that the children at issue here were in need of care and custody was continued with the father. The juvenile court found that the mother had an associate degree and last worked in 2010. The mother was ordered to pay the father $405.50 per month in child support. It was shown that the mother had failed to work on her case plan and refused to undergo a psychological evaluation, claiming to be ill at the appointment. It was also shown that the mother was disrespectful and uncooperative with the court-appointed special advocate (“CASA”) volunteer assigned to this- case. Although custody of the children was continued with the father, the court stated that, if there were a change in circumstances, it would reconsider the custodial assignment. Case review hearings were to be held every six months.
The mother appealed,. claiming that there was insufficient evidence to support the CINC disposition. She also objected to the use of the Gingerbread. House interview. In State in Interest of P.J., 47,550 (La.App.2d Cir.9/12/12), 104 So.3d 517, we affirmed the juvenile court decision, finding that the state proved by a preponderance of the evidence that the children were in need of care. We found that the removal of the children from the mother and stepfather’s house and placement with their father were warranted. We also noted that the mother had stipulated to the admission of the Gingerbread House DVD.
While that appeal was pending, a case review hearing was held. On July 11, 2012, the juvenile court ordered that the custody of the children be maintained with their father. The DCFS supervision of the placement was terminated, and the mother was granted unsupervised visitation with the children for two hours every Saturday. The court ordered that the matter was to remain open.
On September 7, 2012, the father and the. children filed a rule for contempt, claiming that the mother had not paid her child support obligation and was in arrears in the amount of $3,244. On September 20, 2012, the juvenile court found the mother to be in contempt and sentenced her to six months in the parish jail. The court ordered the mother released on September 27, 2012, and deferred the remainder of the sentence pending compliance with the child support obligation.
Another case review hearing was held in December 2012. In January 2013, the mother filed an emergency motion to modify judgment and a motion for contempt against .the father, claiming he would not allow her to see the children. At a hearing on February 14, 2013, the court suspended unsupervised visitation by the mother and ordered that the DCFS supervise her visitation, which was limited to one hour every other Friday. At a hearing on March 8, 2013, both the mother and father were found in contempt for violation of the visitation order. The mother was *920 also found in contempt for violation of the child support order.
Nothing transpired in this case for several years. The children’s father tragically died in an automobile accident on August 24, 2015, and the children went to live with their paternal grandmother, ’Stephanie Jones Gant, and her husband. Through a chance encounter with one of the children at a store in September 2015, the mother found out about the father’s death. According to the grandmother, the children had not seen their mother in two or three years.
On September 14, 2015, the mother filed for an “Emergency Modification of Judgment” in the juvenile court in which she sought to have the children returned to her. This pleading was filed by the mother in the CINC proceedings initiated in September 2011, A hearing was held on September 18, 2015. Present at that hearing were the mother, the grandmother and her husband, and the attorney for the children. The court noted that it had jurisdiction and appointed counsel for the mother. The court also ordered that the DCFS be notified.
On October 1, 2015, the court held a more extensive hearing on the mother’s motion. The mother declined representation by appointed counsel, who was in court with her, and chose to represent herself. She stipulated that there had been a significant change in circumstances regarding custody of the children due to the death of their father, and there was a basis for the juvenile court to modify the custody disposition.
The grandmother’s counsel questioned the mother, who 'stated that she was living with her husband and his father. Her husband was the same man whose abuse of the children in 2011, together with that of the mother, resulted in the institution of these CINC proceedings. In later questioning, the mother stated that she believed the court found that she alone abused the children and that their stepfather had been exonerated of those charges. The mother stated that she was unemployed, had not worked in several years, and acknowledged that she had not paid her child support obligation. The mother admitted that she did not have custody of another child who was removed from her home at the same time as PDJ, WIJ, and HOJ.
The mother admitted that she did not undergo a psychological evaluation previously ordered by the court. At one point, she had unsupervised visitation with the children at issue here, but that was revoked and the court ordered that visitation be supervised. The mother was asked about her failure to complete' her case plan. She stated that she thought the CINC proceedings were dismissed, that the juvenile court was divested of its jurisdiction, and that the DCFS was dismissed and could not oversee the case plan. The mother stated that she had no income, but had an associate degree in business administration from Bossier Parish Community College.
The children’s attorney also questioned the mother. She stated that she was not aware of any counseling or medical needs of the children, but was prepared to meet those needs.
The attorney for the DCFS questioned the mother, who claimed that she always exercised her visitation with the children until the father stopped bringing them. The mother explained that she did not file a rule to enforce visitation because she was afraid she would be found in contempt of court and sent back to jail. The mother acknowledged that she did not know what her case plan required, did not complete her psychological evaluation, but thought *921 she had completed anger management class. A letter from the DCFS to the court in March 2012 indicated that the mother failed to attend the required number of sessions to complete the class.
The mother acknowledged that the court ordered her to pay child support, but asserted that she had no idea of the monthly amount. She did not know how much her husband paid in rent or the amount of their monthly utility bills. She claimed to have neuropathy for which she took medication and did her own physical therapy routine for two to three hours per day. She claimed that she had been looking for part-time work for the last several weeks.
The juvenile court denied the mother’s motion to return the children to her. Custody was maintained with the paternal grandmother and her husband. The court set another hearing, which was to be held on January 21, 2016. The court instructed the mother that, at the next hearing, she would be given an opportunity to show that she had completed anger management class, that her husband did not present a risk of harm to the children, and that she could protect them. The DCFS was to be given an opportunity to show whether the mother was unfit to have custody of the children. The paternal grandmother was also to be given an opportunity to present evidence on those issues.
On October 8, 2015, the mother filed a notice of intent to apply for a supervisory writ and to stay the proceedings. She sought review of the trial court’s action in denying her request to return the children to her and in placing them in the custody of the paternal grandmother and her husband, pending a full hearing on the merits. She basically argued that the juvenile court did not allow her to present evidence at the hearing and violated her due process rights by determining that she could not have custody of the children because she failed to complete her case plan and still lived with her husband. She argued that the CINC proceedings were terminated on September 21, 2011, when the father was given custody of the children and that the case plan was null. She also contended that the juvenile court erred in allowing the DCFS and the paternal grandmother to intervene and provide opinions on the placement of the children. On February 11, 2016, this court denied her writ application. See State in the Interest of P.J., W.J., and H.J., 50,729-JWC (La.App.2d Cir.2/11/2016).
While the writ application was pending, on November 24, 2015, the grandmother filed a petition to be appointed tutrix of the three minor children, claiming that they had legal rights in a wrongful death claim arising from the death of their father.[1] On December 3, 2015, Ms. Gant filed in the juvenile court a petition to be appointed guardian of the children.
On February 4, 2016, the children’s counsel filed a motion and order on their behalf for guardianship, requesting that the court- appoint their paternal grandmother as their guardian.
On January 19, 2016, the mother filed a motion to dismiss the petition for guardianship based upon failure to state a claim, lack of jurisdiction, “violation of res judica-ta or civil double jeopardy,” and for a stay pending resolution of her writ application, which was then pending in this court. The mother claimed that, because the CINC *922 proceedings had been terminated, the juvenile court did not have jurisdiction to decide guardianship.
On March 18, 2016, the mother also filed exceptions of lack of jurisdiction, improper joinder of parties, res judicata, no cause of action, and no right of action. The juvenile court held a hearing on the mother’s motion and exceptions and the motions for guardianship on March 29, 2016. The court first considered the mother’s exceptions. The mother argued that the role of the DCFS was fulfilled when custody was given to the father,’ and that agency was now without authority to do case reviews or to be involved in a permanency hearing. She also contended that the DCFS lacks authority to assert that guardianship "with the grandmother is in the best interest of the children and ‘could -not request that the grandmother be made the guardian of the children. The court denied her exceptions and her motion to dismiss. The court then turned- to consideration of the guardianship issue.
Counsel for the children called the grandmother to testify. She is 69 years old and is retired. Her husband is 56 years old and is employed as a truck driver, They have been married for 23 years. Her husband is not the biological grandfather of the children. The grandmother stated that the children have' lived with them since their father’s death in August 2015. She looked for the children’s mother, but could not find her. On September 13, 2015, the grandmother was at a .store with the oldest child when they encountered a half-sister of the children, who was also a daughter of their mother. The half-sister.contacted the mother, who came to the store. The mother asked if she could see the children. The grandmother was agreeable; however, the next week she was served with the legal proceedings instituted by the mother.
According to the grandmother, all three children have ADHD and see a psychiatrist. A therapist visits the home twice a week to deal with the children’s anger and behavioral issues. The grandmother stated that her home is ample to accommodate the needs of the children.
The grandmother said that the mother has not provided any financial support for the children and was $17,000 in arrears prior to the father’s death. The mother had not seen the children for several years and had not sent birthday or Christmas gifts.
According to Rose Coleman, the DCFS representative, the children were originally removed from the mother because of physical abuse by the mother’s husband. In addition to the three children involved in ‘this matter, two other children were also removed from the home at that time. The case plan entered on October 4, 2011, required the parents to complete parenting education, attend family team conferences and court hearings, to visit with the children, and attend medical and other appointments. They were ordered to submit to psychological evaluations and to attend anger management classes. The mother did not participate in the case plan. The DCFS determined that reunification with the mother was not possible.
Ms. Coleman also testified regarding the recent home study conducted of the grandmother’s residence. The mother objected to its admission because it was “unlawfully created.” The home study showed that the grandmother’s house was neat and clean, the grandmother and her husband did not have criminal records, the children seemed to enjoy living there, and it was a suitable environment.
The mother placed herself on the witness stand and testified that the father refused to allow her to see the children. *923 She claimed she was unaware of a child support obligation or an arrearage. She was separated from her husband, and was currently living with her female paramour, who is employed as a truck driver. They live in a one-bedroom, one-bathroom residence. Although still unemployed, she claimed to be looking for work. She stated that she tried to comply with the case plan, but had' a “misunderstanding” and “miseommunieation” with the case manager.
Following the hearing, the court stated on the record that the children had shown they had been adjudicated in need of care, that neither adoption nor reunification with the mother was in their best interest, that they had resided with their grandmother for at least six months, and the grandparents were able to provide a safe, stable, and wholesome home for the duration of the children’s minority.
On March 30, 2016, the juvenile court signed a judgment granting the guardianship of the children to their paternal grandparents, pursuant to Title VI of the Louisiana Children’s Code. The court ordered that guardianship is the permanent plan for the children and is to remain in effect until the 18th birthday of each child. The court decreed that this was the least restrictive disposition, was in the best interest of the children, there was a legitimate purpose and factual basis for finding that the children cannot be returned to the custody of the mother, and the children cannot wait any longer for the mother to rehabilitate. The grandparents were ordered not to give the children to the mother or any other person unless authorized by the court.
The mother appealed in proper person. She argues, that the juvenile court erred in denying her exceptions, requiring her to prove that she completed her >case plan, allowing the case plan to be used as evidence in this disposition, finding that the Louisiana Children’s Code provisions on guardianship were applicable to this case, and admitting into evidence the home study report of the grandmother’s home. We note at the outset that many-of the mother’s arguments on appeal are redundant and exhibit a complete lack of understanding of the mechanics of the Louisiana Children’s Code. We will endeavor to address all of her arguments, even though some of them should have been raised in the first appeal. However, we recognize that she is representing herself and we are affording her great latitude in order to address all her concerns.
LACK OF JURISDICTION
The mother argues that, because the children were placed with their father in September 2011, shortly after the abuse allegations were entered against the mother and her husband, the proceedings were concluded at that point. She argues that, because the DCFS did not have custody of the children' and there was no protective order, the state and the DCFS had no authority to file the CINC petition in October 2011. This argument is without merit.[2]
A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over CINC proceedings. See La. Ch. C. art. 303(A)(2). CINC proceedings are governed by La. Ch. C. arts. 601-725.3. *924 The puipose of the proceedings is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others. The health, safety, and best interest of the child shall be the paramount concern in all CINC proceedings. See La. Ch. C. art. 601. It is well settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. A.N., 46,597 (La.App.2d Cir.7/20/11), 70 So.3d 1041.
The record shows that on September 15, 2011, the DCFS received a report of child abuse regarding HOJ, pursuant to La. Ch. C. art. 612, which provides, in pertinent part:
A.(1) Upon receiving a report of abuse or neglect of a child who is not in the custody of the state, the local child protection unit of the department shall promptly assign a level of risk to the child based on the information provided by the reporter.
(2) Reports of high and intermediate levels of risk shall be investigated promptly. This investigation shall include a preliminary investigation as to the nature, extent, and cause of the abuse or neglect and the identity of the person actually responsible for the child’s condition. This preliminary investigation shall include an interview with the child and his parent or parents or other caretaker and shall include consideration of all available medical information provided to the department pertaining to the child’s condition[.]
D. Upon determination that there is reason to believe that the child has been abused or neglected, the local child protection unit shall conduct a
more intensive investigation. If necessary, the investigator may apply for an evaluation order authorized by Article 614.
La. Ch. C. art. 615 provides, in pertinent part:
B. After investigation, the local child protection unit shall make one of the following determinations:
(1) The child appears to be a child in need of care and his immediate removal is necessary for his protection from further abuse or neglect, in which case, whenever such extraordinary justification arises, it shall apply for an instanter removal order to place the child in the custody of a suitable relative or other suitable individual capable of protecting the health and safety of the child or the state authorized under Articles 619 and 620 and shall notify the district attorney as soon as possible.
La. Ch. C. art. 619 provides, in relevant part:
A. (1) A peace officer, district attorney, or employee of the local child protection unit of the department may file a verified complaint alleging facts showing that there are reasonable grounds to believe that the child is in need of care and that emergency removal or the implementation of a safety plan is necessary to secure the child’s protection.
(2) After the complaint has been filed, the parent is without authority to place the child with any individual or institution except the department until legal custody is returned to the parent or the safety plan is terminated[.]
C. (1) Upon presentation of the verified complaint, the court shall immediately determine whether emergency *925 removal or the issuance of a safety plan order is necessary to secure the child’s protection.
(2) If the court determines that the child’s welfare cannot be safeguarded without removal, the court shall immediately issue a written instanter order directing that the child be placed in the provisional custody of a suitable relative or other suitable individual capable of protecting the health and safety of the child or taken into the custody of the state. The order shall contain written findings of fact supporting the necessity for the child’s removal in order to safeguard his welfare. If custody is given to a suitable relative or other suitable individual, a safety plan shall be made an order of the court and shall direct the provisional custodian to adhere to the conditions of the safety plan. The safety plan shall set forth conditions of contact with parents or other third parties. (Emphasis supplied.)
The DCFS complied with these provisions, investigated the report, and determined that all three children had been the victims of abuse in their mother’s home. The children were removed from the home on an emergency basis, pursuant to an instanter order issued by the juvénile court on September 19, 2011. They were placed in foster care at that point.
La. Ch. C. art. 624 sets forth the procedure to be used when a child is removed from the home and specifies, in pertinent part:
A. If a child is not released to the care of his parents, a hearing shall be held by the court within three days after the child’s removal or entry into custody. An order setting the hearing shall provide for appointment of counsel for the child and notice to the program approved to represent children. If a safety plan has been ordered, a hearing shall be held by the court within three days from the issuance of the safety plan order, unless the parents are in agreement with the safety plan. The parents’ signature on the safety plan shall constitute evidence of their agreement with the plan.
The record shows that the continued custody hearing was held on September 21, 2011, within the three-day limit set forth in La. Ch. C. art. 624. At the hearing, in accordance with La. Ch. C. art. 626, which deals with grounds for continued custody, the juvenile court authorized the continued custody of the children based on finding there were reasonable grounds to believe that they were in need of care, and continued custody was necessary for their safety and protection.
La. Ch. C. art. 627 states that, following a hearing, the court may return the child to the parents or, in accordance with La. Ch, C. art. 622 dealing with placement of children pending a continued custody hearing, may place the child in the custody of a suitable relative, other suitable individual, or the DCFS. In this case, the juvenile court determined that the children should not be returned to the mother at that point, but that placement with the father was suitable. Contrary to the arguments made by the mother, the placement of custody with the father did not end the CINC proceedings. It was merely a step in the process.
Regarding CINC petitions, La. Ch. C. art. 631 states:
A. A child in need of care proceeding shall be commenced by petition filed by the district attorney. The Department of Children and Family Services, when authorized by the court, may file a petition if there are reason *926 able grounds to believe that the child is a child in need of care.
B. At any time prior to adjudication, any person, including a relative of the child, may petition the court for the provisional or permanent legal custody of the child.
The time limits for filing CINC proceedings are governed by La. Ch. C. art. 682, which states, in relevant part:
A. If a child is continued in custody prior to adjudication, or if a protective order is issued, a petition requesting that the child be adjudicated in need of care shall be filed within thirty days of the hearing to determine continued custody. If the child remains in the home and a safety plan order has been issued, a petition requesting that the child be adjudicated in need of care shall be filed within forty-five days of the issuance of the safety plan order.
The juvenile court had exclusive original jurisdiction over the CINC proceedings. The CINC petition was filed on October 18, 2011, 27 days after the continued custody hearing, in compliance with the statutory time limits. The mother is simply incorrect in arguing that the petition had to be filed 30 days before a continued custody hearing and that the DCFS was without authority to file the petition if the custody of'the children was not placed with the department at the continued custody hearing. All steps in the CINC proceedings were properly followed. Further, the juvenile court retained continuing jurisdiction under La. Ch. C. art. 309 and never relinquished jurisdiction under La. Ch. C. art. 313.
IMPROPER JOINDER OF PARTIES
The mother claims the court erred in allowing the grandmother to participate in the proceedings without filing a motion to intervene. The mother also contends that the court erred in allowing the DCFS to be a party to this case where the agency’s legal and physical custody of the children was terminated on September 21, 2011. She argues that the DCFS should not have been allowed to intervene because the children had been permanently placed with their father. These arguments are without merit.
La. C.C.P. art. 926 specifies matters that may be raised in a dilatory exception, including improper joinder of parties. La. C.C.P. art. 923 provides that dilatory exceptions merely retard the progress of an action; they do not defeat it. Under the facts of this case, the mother has failed to show an improper joinder of parties.
The mother’s arguments in this case are largely based upon the erroneous notion that the CINC proceeding ended when custody of the children was placed with the father in September 2011. As exhaustively set forth above, the record shows that the required investigations, hearings, adjudications, and disposition were properly held after that point. The present matter is still a CINC proceeding and the juvenile court has continuing jurisdiction over the proceeding under La. Ch. C. art. 309, which states, in relevant part:
A. Except as provided in Article 313,[3] a court exercising juvenile jurisdiction shall have continuing jurisdiction over the following proceedings and the exclusive authority to modify any custody determination rendered, including the consideration of visitation rights:
*927 (1) Child in need of care proceedings pursuant to Title VI.
It is important to note that, on September 14, 2015, the mother herself filed a motion for “Emergency Modification of Judgment” in the juvenile court, in this CINC proceeding. The burden of proving justification for modification of a custody disposition of a child earlier found in need of care is on the party who seeks to modify the disposition of custody. In re H.B., 99-565 (La.App. 3d Cir.10/13/99), 747 So.2d 144. La. Ch. C. art. 714 provides that the court may modify a judgment -of disposition on its own motion or on the motion of the district attorney, the DCFS, the child, or his parents. A judgment of disposition may be modified-if the court finds that the conditions and circumstances justify the modification. La. Ch. C. art. 716.
It was the mother who invoked the jurisdiction of the juvenile court in September 2015, and sought to have it return custody of the children to her due to the father’s death. Based upon her motion for emergency modification, the court set a hearing on September 18, 2015. On that date, the attorney for the children was present, as well as the mother and the grandmother. The court appointed an attorney for the mother, whom she later rejected. The court determined that there had been a major change in circumstances warranting a hearing to determine how to modify the prior judgment. The juvenile court did not allow any improper interventions in this matter. At a hearing on October 1, 2015, the juvenile court was charged with determining the proper course of action for the health, safety, and best interest of the children. The court did not err in allowing the grandmother, with whom the children had been living, and the DCFS to provide information aimed at aiding the court in making that determination. The mother’s claim that the juvenile court erred in allowing the grandmother and the DCFS to be parties -to this proceeding is unfounded.

RES JUDICATA

The mother asserts that, in the present proceedings, the DCFS and the grandmother should not be allowed to bring up the abuse the children suffered in the past. She argues that, unless there are new charges of abuse and the state had custody of the children, there would be new issues in the matter and res judi-cata would not apply. In the trial court, the mother argued that the grandmother’s claim for guardianship should have been asserted earlier in the CINC proceedings, when the father was granted custody. According to the mother, because the claim was not raised then, it is now barred by res 'judicata. These arguments are without merit.
La. R.S. 13:4231 on res judicata provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is. the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final, judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and . the judgment bars a subsequent action on those causes of action.
*928 (3) A judgment in favor ■ of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
As noted above, the juvenile court has continuing jurisdiction in this CINC matter and has the duty to determine the best interest of the children. The mother asked for a modification of the disposition based upon a significant change in circumstances caused by the death of the father, who had custody of the children. The mother had the duty to show that the conditions and circumstances justified a modification of the prior disposition. The court was then required to determine whether the children should be placed with their mother or whether their paternal grandmother should be appointed their guardian. This was a different issue, involving different parties. Also, the grandmother was not required to ask for guardianship earlier in the proceedings because the father was still alive and was deemed by the juvenile court to be the best person to place the children with at that time. Following his death, the circumstances were changed significantly. Further, the allegations of abuse and the issue of whether the mother had reformed were relevant inquiries in determining a custody placement for the children that would be in their best interest. Res judicata has no application under these circumstances.
NO CAUSE/NO RIGHT OF ACTION
The mother asserts that the children’s attorney did not have a right or cause of action to file a motion for guardianship because the state did not have custody of the children and there are no new allegations of abuse or neglect. This argument is without merit.
As set forth above, the juvenile court had continuing jurisdiction over this CINC proceeding. Early in the proceedings, the children were removed from the mother and briefly placed in foster care. Custody was later placed with the father. The mother sought to have the disposition of custody to the father modified upon his death. In response to the mother’s motion, the attorney for the children filed a motion requesting that their grandmother be appointed their guardian.
La. Ch. C. art. 720(A) sets forth those who may file a motion for guardianship:
A. After a child has been adjudicated to be in need of care, a motion for guardianship may be filed by the department, parent, counsel for the child, or, when the guardian is deceased, an individual previously named as a successor guardian by the guardian in a guardianship subsidy agreement with the department; or the department may submit a case plan along with the case review report to the court and all counsel of record recommending guardianship in accordance with Children’s Code Articles 674, 688, and 689. (Emphasis supplied.)
La. Ch. C. art. 720 clearly shows that counsel for the children had a light to file a motion for guardianship. The mother’s argument to the contrary is unfounded. The best interest of the children is the paramount consideration in these proceedings and the juvenile court acted properly in placing the guardianship of the children with the grandmother.
ADMISSIBILITY OF PRIOR CASE PLAN
The mother asserts that the juvenile court erred in requiring her to prove that she completed the case plan in the prior proceedings and allowing the case *929 plan to be used as evidence and a part of its disposition. She maintains that, because custody of the children was placed with the father on September 21, 2011, the case was concluded at that point, and the DCFS did not have authority to formulate a case plan for her or to monitor her compliance with it. She also argues that, if she did not comply with the plan, the DCFS should have terminated her parental rights and instituted adoption proceedings for the children. These arguments are without merit.
The children were placed in the custody of the DCFS and eventually were placed with their father. They were adjudicated to be in need of care. At that point, the juvenile court and the DCFS proceeded in accordance with the law in formulating a case plan to determine a disposition that would be in the best interest of the children. La. Ch. C. art. 668 provides:
A. Following adjudication, the court may order a predisposition investigation. The investigation shall include the circumstances, needs, and social history of the child and his family, and also the circumstances surrounding the factual allegations of the petition. It shall also assess whether the child has an established and significant relationship with a parent, grandparent, sibling, or other relative which should be preserved in the best interests of. the child. If so, the department shall include in the case plan arrangements for the child’s continuing contact with such individuals while the child is in foster care.
B. A written report of the investigation and findings shall be submitted to the court prior to the disposition hearing.
La. Ch. C. art. 673 states:
Within sixty days after a child enters the custody of a- child care agency, the custodian shall develop a case plan detailing the custodian’s efforts toward achieving a permanent placement for the child. The health and safety of the child shall be the paramount concern in the development of the case plan.
La. -Ch. C. art. 680 provides:
The court shall consider the report of the predisposition investigation, the case plan, any reports of mental evaluation, and all other evidence offered by the child or the state relating to the proper disposition. The court may consider evidence which would not be admissible at the adjudication hearing.
These articles show that the DCFS had authority to develop a case plan for the mother and to monitor her compliance with the plan. The record shows that the mother failed to complete anger management classes and a mental health evaluation. She was uncooperative with the DCFS personnel monitoring her progress on the case plan. Due to her failure to complete- the case plan, custody of the children was placed -with the father and reunification with the mother was removed as a goal. The mother’s behavior eventually caused her to lose the right to unsupervised visitation with the children.
The case plan was valid and the mother was required to comply with the plan in order to be reunified with the children. Due to the death of the children’s father and based upon the mother’s motion to modify the disposition, the juvenile court exercised continuing jurisdiction to determine a placement for the children that would be in their best interest. At that point, the mother’s failure to comply with the requirements of her-case plan was a relevant factor in determining how to modify the disposition of the children. The record shows that the case plan was valid *930 and the court- did not err in considering it and the mother’s noncompliance with it in making its determination to grant guardianship to the grandmother.
GUARDIANSHIP -
The' mother asserts that, because the custody of the children had previously been placed with the father, the juvenile court erred in considering the guardianship petition filed in this matter. She claims that guardianship could only be considered in a dispositional hearing. These arguments are without merit.
As stated previously, the juvenile court has continuing jurisdiction of this matter under La. Ch. C. art. 309. The mother acknowledged this in court. Previously, the children were taken into custody by the DCFS and adjudicated in need of care. After a disposition hearing, custody was placed with the father. Following his death, the mother filed a motion to modify that disposition. La. Ch. C. art. 714 states that the, court may modify a judgment of disposition on its own motion or on the motion of the district attorney, the DCFS, the child, or his parents, A judgment of disposition may be modified if the court finds that the conditions and circumstances justify the modification.
The purpose of guardianship is to provide a permanent placement for children when neither reunification with a parent nor adoption has been found to be in their best interest; to encourage stability and permanence in the lives of children who have been adjudicated to be in need of care and have been removed from the custody of their parent; and to increase the opportunities for the prompt permanent placement of children, especially with relatives, without ongoing supervision by the department. La. Ch. C. art. 718. After a child has been adjudicated to be in need of care, a motion for guardianship may be filed by the DCFS, parent, or counsel for the child. See La. Ch. C. art. 720.
In this case, the juvenile court had previously found that reunification with the mother was not in the best interest of the children. None of the parties to this matter have ever contended that adoption of the children would be in their best interest. As set forth above, after the death of their father and the motion to modify their disposition filed by the mother, the children were within their rights to petition the court requesting that their guardianship be placed with their grandmother. The juvenile court did not err in modifying its disposition to grant guardianship to the grandmother.
HOME STUDY REPORT
The mother argues that the court erred in ordering that the DCFS conduct a home study report regarding the grandmother’s home and allowing the report to be filed into evidence. She asserts that the DCFS was without authority to conduct the study because they did not have custody of the children. This argument is without merit.
The juvenile court was called upon to consider a proper motion for guardianship filed by the children under La. Ch. C. art. 720. At that point, the law provides that the DCFS shall investigate and evaluate the home of the proposed guardian. La. Ch. C. art. 721 provides:
The department shall submit to the court a confidential report of its investigation and evaluation of the home of the proposed guardian. The report shall include all of the following:
(1) The moral and financial fitness of the proposed guardian.
(2) The conditions of the home of the proposed guardian with respect to *931 health, adjustment, and other advantages or disadvantages for the child.
(3) The physical and mental condition of the child and his reaction to the proposed guardianship.
(4) The plan for the child if the proposed guardian becomes incapable of providing care.
The juvenile court properly ordered and considered a home study regarding the grandmother, which showed that the home that she and her husband provided to the children was a suitable environment for them and that the grandmother and her husband were suitable guardians for the children. In contrast, we note that, according to the mother’s testimony, she had not worked in many years, had not fulfilled her child support obligation to the children, and had not seen them in several years. The mother does not have a residence of her own to provide for them. At the time of the guardianship hearing, the mother lived in a one-bedroom, one-bathroom residence with her current paramour. Under the circumstances presented here, we find that the juvenile court did not err in admitting the report.'
CONCLUSION
For the reasons stated above, we affirm the judgment of the juvenile court granting the guardianship of PDJ, WIJ, and HOJ to their paternal grandmother, Stephanie Jones Gant, .and her husband, Bobby Gant. Costs in this court are assessed to the mother, Whitney Thompson.
AFFIRMED.

. The clerk of court filed this pleading with the juvenile court proceedings. The juvenile court issued an order noting that it did not have jurisdiction over tutorship proceedings, but that it had retained exclusive jurisdiction over the- custody of the children so the court did not transfer the petition for tutorship to the district court. The juvenile court reserved to the grandmother the right to file alternative pleadings in the juvenile court.

. We note that the mother is objecting to procedural matters that allegedly occurred earlier in this case. The mother appealed from the earlier judgment which placed custody of the children with their father following an evidentiary hearing. That judgment was affirmed by this court in State in Interest of P.J., supra. In the prior appeal, the mother did not raise the procedural issues complained of here. We conclude that the prior proceedings in this matter were properly handled.

. La. Ch. C. art. 313 specifies instances which may terminate juvenile jurisdiction, none of which apply here.